**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| Tamara Leman, on behalf of herself and all others similarly situated, known and unknown, ) ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | Case No. | |
| Institute for Plastic Surgery, Ltd., and Otis Allen, MD, individually, ) ) ) | | |
| Defendants. ) | Jury Trial Demanded | |

## COMPLAINT

Plaintiff Tamara Leman, on behalf of herself and all others similarly situated, through her attorneys, Garfinkel Group, LLC, complains against Defendants Institute for Plastic Surgery (the "Institute") and Otis Allen, M.D. ("Dr. Allen") as follows:

### INTRODUCTION

1. Tamara Leman worked for the Institute for Plastic Surgery. The Institute failed to pay her agreed wages, commissions, and overtime, and her boss—Dr. Otis Allen—sexually harassed and medically battered her.

2. This is an individual action for battery under the Illinois common law and a putative class and collective wage-theft action under the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL") and Illinois Wage Payment and Collection Act ("IWPCA").

### PARTIES

3. Defendant Institute for Plastic Surgery is an Illinois corporation headquartered in this district.

4. Defendant Otis Allen, M.D., owns and operates the Institute for Plastic Surgery and resides in this district.

1

5. Plaintiff Tamara Leman is a former employee of the Institute and Dr. Allen and resides in this district.

6. Within the prior three (3) years, and at all times relevant herein, Plaintiff and the Plaintiff Class were employed by Defendants as "employees," as defined by the FLSA, IMWL, and IWPCA. 29 U.S.C. § 203I(1); 820 ILCS §105/3; 820 ILCS 115/2. At all times relevant herein, Defendants employed Plaintiffs and the Plaintiff Class they seek to represent, and therefore meet the definition of "employers," as defined by the FLSA, IMWL, and IWPCA. 29 U.S.C. § 203I(1); 820 ILCS §105/3.

7. The Institute is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203I(1), engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

8. At all relevant times herein, Plaintiffs and the Plaintiff Class were eligible for, and owed both the minimum wage and overtime pay compensation by virtue of their job title and duties and did not fall into any exemptions to state, or federal minimum wage and overtime pay requirements.

9. Plaintiffs and the Plaintiff Class are current and former hourly employees who either currently work or worked for Defendants.

10. Plaintiffs and the Plaintiff Class were regularly and consistently required to perform duties for which they were not compensated.

11. At no point during their respective time working for Defendants did Plaintiffs and the Plaintiff Class receive all earned and agreed to wages.

**JURISDICTION AND VENUE**

12. Jurisdiction is proper under 28 USC § 1331. Plaintiff asserts claims under federal law. This Court has personal jurisdiction over Defendant as it is registered to do business in Illinois, and it purposely and knowingly transacts business in this state.

13. Venue is proper under 28 U.S.C. §1391(b) because the parties reside in the Central District of Illinois, and all of the at-issue conduct occurred in the Central District of Illinois.

## FACTS

**Sexual and Medical Battery**

14. While Tamara was employed at the Institute—her boss—Dr. Otis Allen medically and sexually battered her.

15. In January 2022, Dr. Allen performed a breast augmentation on Tamara.

16. Four months later, in April 2022, Dr. Allen conducted a follow-up exam on Tamara. During that exam, Tamara and Dr. Allen were alone. Dr. Allen pushed Tamara's breasts together and commented that he "liked to have his fun from the waist down" while touching Tamara's breasts.

17. In October 2022, Tamara requested that Dr. Allen inject her with Dysport to lift her eyebrows. Rather, than comply with Tamara's request, Dr. Allen injected her in such a way as to cause her eyebrows to drop rather than lift.

18. Tamara did not consent to such injections, these injections were done against Tamara's will, and were at substantial variance to the procedure that Tamara did consent to.

**Wage Theft Allegations**

19. Tamara worked for the Institute and Dr. Allen starting on or around January 2022. The Institute agreed to pay Tamara $20 an hour plus commissions for aesthetic procedures.

20. The Institute provided Tamara with a schedule detailing commission owed per procedure. A copy of that commission schedule is attached as Exhibit A.

21. A month after she started, Tamara asked the Institute to provide evidence of her pay rate so she could rent an apartment. The document that the Institute provided said that it was paying Tamara $20 an hour. A copy of that pay-verification document is attached as Exhibit B.

22. Defendants failed to pay Tamara and similarly situated employees at their agreed-upon rates.

23. At all times relevant herein, Plaintiff fulfilled the obligations and completed the work they agreed to undertake for the Defendants.

24. At no point during her employment with the Institute or anytime thereafter was Tamara paid their earned and agreed to wages for all work performed for the Defendants, despite Tamara fulfilling all of her obligations under the parties' agreement.

25. By refusing to pay Tamara and similarly situated employees their agreed-on wage, Defendants have violated their agreement and violated the IWPCA.

26. Defendants also violated various federal and state laws in failing to pay Plaintiff time and a half for all hours worked in excess of 40 in a workweek. The Institute did not pay Tamara and similarly situated employees their agreed upon wages. Defendants engaged in "wage shaving" by failing to pay Tamara and similarly situated employees for all hours worked, including overtime.

27. Tamara and similarly situated employees made several complaints to Defendants regarding their failure to pay earned and agreed-to compensation.

28. Despite these complaints, Defendants have not paid Plaintiff and the likely class members their earned and agreed-upon wages.

**FLSA Collective Allegations**

29. Tamara brings the first and second counts of this complaint on behalf of a collective defined as follows:

All current and former non-exempt Institute employees who elect to opt in to this action and who worked for the Institute three years before the filing of this action through the date of judgment.

30. At all relevant times, Plaintiff and the FLSA collectives have been similarly situated,

have had similar job duties, requirements, and pay provisions, and have been subject to Defendants' policy of willfully refusing to pay Plaintiff and the FLSA collectives wages as required by the FLSA, including overtime wages.

31. Defendants' unlawful conduct was done under a corporate policy or practice of willfully refusing to pay Plaintiff and the FLSA collectives for all hours worked.

32. Defendants knew or should have known that federal law requires them to pay Plaintiff and the collectives for all hours worked and not alter timekeeping records.

33. The members of the FLSA collectives are readily ascertainable.

34. Plaintiff will seek a service award to compensate her for her service on behalf of the FLSA collectives upon resolution of this case.

**Class Allegations**

35. The following class allegations apply to the third, fourth, and fifth counts of this Complaint.

36. Tamara seeks to maintain this suit as a Collective pursuant to 29 U.S.C. §216(b) and as a Class pursuant to Fed. R. Civ. Pro. 23, on behalf of herself and all other nonexempt employees who were not fully compensated for all hours worked. She seeks to represent the following classes:

*IWPCA Class*

All current and former Institute workers employed in Illinois ten years before the filing of this action through the date of judgment.

*IMWL Class*

All current and former Institute workers employed in Illinois three years before the filing of this action through the date of judgment.

37. Excluded from the classes are Defendants' legal representatives, officers, directors,

assigns, and successors, or any individual who has or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and their immediate family as well as all persons who timely opt out of the Rule 23 class.

38. The number and identities of the Rule 23 class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay and reimbursement for likely class members are also ascertainable from Defendants' records. Notice can be provided by any means allowed under Rule 23.

39. Upon information and belief, there are at least fifty class members, making the class so numerous that joinder is impracticable. Although the exact number of likely class members is currently unknown, the members can easily be ascertained through Defendant's personnel records.

40. Plaintiff's claims are typical of those of the classes that she seeks to represent, and the relief she seeks is also typical of the relief that would be sought if class members were to bring separate actions.

41. Plaintiff and the likely class members were subject to the same corporate policies alleged above that resulted in the failure to pay wages owed to them, including minimum and overtime wages. Plaintiff and the likely class members have all experienced similar injuries resulting from Defendants' violations of the IMWL and the IWPCA.

42. A class action is the superior method of resolving this controversy, particularly because this is wage and hour litigation on behalf of low wage employees. Likely class members lack the financial resources to prosecute individual actions. A class action will allow a large number of similarly situated individuals to recover lost wages without unnecessarily wasting resources. Because the losses by the individual class members are relatively small in the sense pertinent to class actions, individual litigation would be unduly burdensome and expensive. Moreover, an important public interest will be served by addressing this matter on a classwide basis. The adjudication of individual litigation claims

would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to fashion methods to efficiently manage this action as a class action.

43. Upon information and belief, wage-theft victims are often afraid to assert their rights because they fear retaliation that may harm their current or future employment prospects. A class action would give absent class members an opportunity to vindicate their rights without risking retaliation.

44. Rule 23(b)(3) provides that a cause of action may be maintained as a class action if: there are many questions of law and fact common to the claims of Plaintiff and the other Class members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a) Whether Defendants paid Plaintiff and likely class members at their agreed-upon rates;

    b) Whether Defendants paid Plaintiff and likely class members for all hours worked;

    c) Whether Defendants and the rule 23 class members had an agreement to pay class members a certain amount or in a certain way;

    d) Whether Defendants failed to pay Plaintiff and likely class members in a timely manner as required by the IWPCA.

    e) Whether Plaintiff and likely class members are entitled to damages and injunctive

relief.

45. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

46. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

47. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
### FLSA—Failure to Pay Minimum Wages

48. Plaintiff realleges incorporates Paragraphs 1-47 as though fully restated herein.

49. This Count arises from Defendants' violation of the FLSA based on their failure to compensate Plaintiff and likely class members at least the applicable federal minimum wage for each hour worked, in violation of FLSA. 29 U.S.C. § 206 *et seq*. This resulted in them receiving less than the legal minimum wage for all hours worked.

50. The FLSA requires an employer to pay its covered, non-exempt employees the federal

minimum wage for each hour worked in a workweek. 29 U.S.C. § 206(a)(1)(c).

51. Plaintiff and likely collective members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b) in that Defendants failed to pay them minimum wages.

52. Individual corporate officers or owners may be held liable for FLSA violations where they possess operational control. Solis v. Int'l Detective & Protective Service, Ltd., 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (citing Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991)).

53. Dr. Allen possessed and exercised the following authority relating to the Institute:

   a) The power to hire and fire employees;

   b) Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c) Determining employees' method and rate of pay; and

   d) Maintenance of employee records.

54. Under 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who has been damaged by a defendant's failure to comply with 29 U.S.C. §§ 206 – 207. Plaintiff attaches as Exhibit A her notice of Consent to Become a Party Plaintiff in a Collective Action under the FLSA.

55. Plaintiff and likely class members were engaged in job duties and responsibilities integral to Defendants' business and did not receive at least the federal minimum wage for all hours worked.

56. Defendants' failure to pay wages for all time worked and, as a result, its failure to pay compensation of at least the federal minimum wage for all hours worked per workweek, is a willful violation of the FLSA, since Defendants' conduct shows that they either knew that their conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA, particularly where several employees made complaints to Defendants regarding its unlawful pay

practices.

57. Plaintiff's experiences are typical of the putative collective.

58. For all members of the putative collective to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to the entire Plaintiff Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b)

59. As are result of Defendant's failure to pay minimum wages, Plaintiff and likely class members have suffered damages in the form of receiving less than the federal minimum wage for each hour worked.

## COUNT II
### FLSA—Failure to Pay Overtime Wages

60. Plaintiff realleges incorporates Paragraphs 1-47 as though fully restated herein.

61. This Count arises from Defendants' violation of the FLSA for its failure to pay Plaintiff and likely class members at least time-and-one-half their hourly rate for all hours worked over 40 in a workweek.

62. Plaintiff and likely collective members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b) in that Defendants failed to pay them at least time-and-one-half their regular hourly rates for all hours worked over 40 in a workweek.

63. Dr. Allen possessed and exercised the following authority relating to the Institute:

   a) The power to hire and fire employees;

   b) Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c) Determining employees' method and rate of pay; and

   d) Maintenance of employee records.

64. Under 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who has been damaged by a defendant's failure to comply with 29 U.S.C. §§ 206 – 207. Plaintiff attaches as Exhibit A her notice of Consent to Become a Party Plaintiff in a Collective Action under the FLSA.

65. Plaintiff's experiences are typical of the likely collective members.

66. For all members of the putative collective to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to the entire Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

67. As a result of the non-payments, Plaintiff suffered damages in the form of unpaid overtime wages.

## COUNT III
### IMWL—Failure to Pay Minimum Wages

68. Plaintiff realleges incorporates Paragraphs 1-47 as though fully restated herein.

69. This count arises from Defendants failure to pay Plaintiff and likely class members minimum wages for each hour worked.

70. The IMWL requires employers to pay all non-exempt employees the minimum wage. 820 ILCS 105/4(a).

71. For the time periods outlined here, Defendants violated the IMWL by failing to pay Plaintiff and likely class members minimum wages for each hour worked.

72. Dr. Allen possessed and exercised the following authority relating to the Institute:

   a) The power to hire and fire employees;

   b) Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c) Determining employees' method and rate of pay; and

    d) Maintenance of employee records.

73. Defendants, pursuant to their policy and practice, violated the IMWL by refusing and failing to pay Plaintiffs and the Class minimum wage by their systematic scheme of wage theft described above.

74. Plaintiffs and the Class are victims of a uniform and employer-based compensation policy. Upon information and belief, this uniform policy, in violation of the IMWL, has been applied, and continues to be applied, to all Class members.

75. Plaintiffs and all similarly situated employees are entitled to actual damages equal to the difference between the minimum wage and actual wages received within the three years preceding the filing of this Complaint.

## COUNT IV
## IMWL—Failure to Pay Overtime Wages

76. Plaintiff realleges incorporates Paragraphs 1-47 as though fully restated herein.

77. This count arises from Defendants failure to pay Plaintiff and likely class members time and a half for each hour worked in excess of forty hours per week.

78. The IMWL requires employers to pay all non-exempt employees the minimum wage. 820 ILCS 105/4(a).

79. For the time periods outlined here, Defendants violated the IMWL by failing to pay Plaintiff and likely class members overtime wages.

80. Dr. Allen possessed and exercised the following authority relating to the Institute:

    a) The power to hire and fire employees;

    b) Supervisory authority over employees, including control over their work schedules and conditions of employment;

    c) Determining employees' method and rate of pay; and

    d) Maintenance of employee records.

81. Defendants, pursuant to their policy and practice, violated the IMWL by refusing and failing to pay Plaintiffs and the Class overtime wages by their systematic scheme of wage theft described above.

82. Plaintiffs and the Class are victims of a uniform and employer-based compensation policy. Upon information and belief, this uniform policy, in violation of the IMWL, has been applied, and continues to be applied, to all Class members.

83. Plaintiffs and all similarly situated employees are entitled to actual damages equal to the difference between the overtime wage and actual wages received within the three years preceding the filing of this Complaint.

## COUNT V
## IWPCA—Unpaid Wages

84. Plaintiff realleges incorporates Paragraphs 1-47 as though fully restated herein.

85. This Count arises from Defendants' violation of the IWPCA based on its failure to pay Plaintiffs and likely class members all earned and agreed to wages.

86. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 Ill. Comp. Sta. 115/2..

87. Defendants agreed to pay Plaintiff $20 per hour for all worked performed.

88. Plaintiff performed her work pursuant to her agreement with Defendants.

89. Defendants have failed to pay her the agreed upon wage.

90. Defendants' failure to pay the agreed rate violates the IWPCA.

91. The case law interpreting the IWPCA provides for individual liability for those individuals considered to be decision makers. *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 109 (2005).

92. By refusing to pay Plaintiff the entirety of her earned and promised wages, Dr. Allen

knowingly permitted the Institute to violate the IWPCA, denying Plaintiff and likely class members compensation to which they were lawfully entitled and pursuant to their respective agreements with the Institute.

93. As a result of Defendants' failure to pay earned and agreed-to wages, Plaintiff and the likely class members have suffered damages for lost wages.

## COUNT VI
**Battery**

94. Plaintiff realleges incorporates Paragraphs 1-47 as though fully restated herein.

95. On or around October 2022, the Institute through its agent, Dr. Allen committed battery against Plaintiff by injecting Dysport into her face.

96. This injection was done in contravention of Plaintiff's explicit instructions and was without consent or substantially at variance with the consent that Plaintiff did provide.

97. As a direct and proximate result of Dr. Allen's actions, Plaintiff has suffered damages of a personal physical and pecuniary nature,

98. As a result, Plaintiff has experienced and continues to experience pain, suffering, emotional distress, disability and disfigurement; she has lost and may continue to lose the earnings and wages she would have received had she not been wrongfully injured; she has been and will be prevented from participating in many of the normal pursuits, activities and enjoyments of daily life; and she has incurred and will in the future continue to incur substantial expense for necessary medical and other care.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a) Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

b) Appointing Plaintiff as class representative and her counsel as class counsel;

c) Determining that this action may be maintained as a collective action pursuant to the FLSA;

d) Awarding judgment for back pay equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

e) Awarding Plaintiff and likely class members' unpaid wages under the FLSA, IWPCA, and IMWL;

f) Damages for Defendants battery of Plaintiff Tamra Leman.

g) Statutory damages equivalent to the maximum statutory monthly interest penalties available pursuant to 820 ILCS 115/14;

h) Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to the FLSA;

i) Awarding pre and post judgment interest;

j) Statutory damages for overtime wage violations pursuant to the 5% interest penalties for IMWL violations that occurred on or after January 1, 2020 and treble damages (820 Ill. Comp. Stat. 105/12(a));

k) Entering an injunction precluding Defendants from violating the IMWL, FLSA or IWPCA;

l) Awarding reasonable attorneys' fees and costs incurred in filing this action; and

m) Ordering such other and further relief as the Court deems appropriate and just.

## Jury Demand

Plaintiff demands that her claims be tried by a jury under Federal Rule of Civil Procedure 38.

Respectfully submitted,

*/s/ Matthew Fletcher*
One of the Attorneys for Plaintiff

The Garfinkel Group, LLC
701 N. Milwaukee Ave.
Chicago, Illinois 60642
Matthew Fletcher (ARDC No. 6305931)
matthew@garfinkelgroup.com
(312) 736-7991